IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL J. STEIN, ET AL.,<br><br>    Plaintiffs,<br><br>  v.<br><br>KAMALA D. HARRIS, ET AL.,<br><br>    Defendants.<br>_____/ | Nos. C 12-00985 CRB, C 12-00987<br><br>**ORDER DISMISSING <u>STEIN</u> CASE, STAYING <u>COPPER</u> CASE** |
| DEAN COPPER, ET AL.,<br><br>    Plaintiffs,<br><br>  v.<br><br>KAMALA D. HARRIS, ET AL.,<br><br>    Defendants.<br>_____/ | |

Now pending are four motions to dismiss in two cases. The first case, <u>Stein v. Harris</u>, 12-985, is brought by Mitchell Stein, a lawyer. The second case, <u>Copper v. Harris</u>, 12-987, is brought by Mitchell Stein's clients.[1] Both allege that the Attorney General Defendants

---

[1] Both are represented by Stein's law firm, the Spire Law Group, LLP.

(Kamala Harris, Benjamin Diehl, and James Toma) and the State Bar Defendants (Blithe Leece and Thomas Layton) acted unlawfully in assuming jurisdiction over Mitchell Stein's law practice, seizing his clients' files, and interfering with his ability to practice law. Plaintiffs take particular issue with the Defendants' having taken such actions without representing to the state court that Stein was in fact a member of an LLP, other members of which might have been able to take over Stein's practice.[2] See, e.g., Case No. 12-985 FAC (dkt. 16) ¶¶ 9, 10.

The four motions to dismiss raise numerous grounds for dismissal, and ask in the alternative for a change of venue to the Central District of California. As explained below, the Court finds that Younger abstention applies, and does not reach Defendants' other arguments.

## I.  BACKGROUND

The complaints in these cases both involve two proceedings in state court: (A) the State Bar assumption proceeding and the State Bar's subsequent involuntary inactive finding; and (B) the Attorney General's enforcement action.

### A.  State Bar Assumption Proceeding and Involuntary Inactive Finding

On August 15, 2011, the State Bar initiated a proceeding in Los Angeles superior court, asking the state court to assume jurisdiction over Mitchell Stein's law practice pursuant to Cal. Bus. & Prof. Code § 6190. See Case No. 12-985 Compl. (dkt. 16) ¶ 3 (alleging that "Defendants" brought action); Case No. 12-985 SB RJN (dkt. 33) Ex. A (Verified Petition and Application for Assumption of Jurisdiction over Law Practice of Mitchell J. Stein) at 1 ("the Chief Trial Counsel of the State Bar of California . . . hereby applies to this court for an order assuming jurisdiction over the law practice of Mitchell J. Stein.").

Section 6190 authorizes the state courts to assume jurisdiction over a law practice when an attorney has "become incapable of devoting the time and attention to, and providing

---

[2] This Order does not take a position on whether Defendants were obligated to make such a representation to the state court; that determination is not relevant to these motions.

G:\CRBALL\2012\985\order re MTDs.wpd                2

the quality of service for, his . . . law practice which is necessary to protect the interest[s] of [his clients]." Cal. Bus. & Prof. Code § 6190. Here, the State Bar alleged that Stein was unable to provide the quality of services necessary to protect the large number of clients he had solicited in a deceptive marketing scheme targeting homeowners who faced foreclosure. Case No. 12-985 SB RJN Ex. A at 1-2.

In October 2011, after considering the parties' arguments and pleadings, the state court found that Stein "has become incapable of devoting the time and attention to, and providing the quality of service for, his law practice which is necessary to protect the interest of a client." Case No. 12-985 SB RJN Ex. C (Permanent Orders Assuming Jurisdiction Over the Law Practice of Mitchell J. Stein) at 1-2. The court's order, among other things, appointed the State Bar to retain and remove client files[3] and placed an asset freeze on client trust accounts. Id. at 2-5. Pursuant to the assumption order, "the Defendants' agents" raided Stein's LLP's offices in Agora Hills, California. Case No. 12-985 FAC ¶ 5. They also froze four bank accounts of Stein's and four corporate bank accounts of the LLP's. Id. ¶ 7.

Following the state court's assumption ruling, the State Bar made a motion in State Bar Court to "involuntarily inactivate" Stein's law license pursuant to Cal. Bus. & Prof. Code § 6007(b)(2). Case No. 12-985 FAC ¶ 16 (alleging that "Defendants" made such motion). That statute provides that the board "shall also enroll a member of the State Bar as an inactive member" where "[t]he court makes an order assuming jurisdiction over the member's law practice, pursuant to Section 6180.5 or 6190.3." Cal. Bus. & Prof. Code § 6007(b)(2). The State Bar Court's December 2011 order notes that the State Bar's Office of the Chief Trial Counsel filed the motion seeking Stein's involuntary inactive enrollment, that it was properly served, and that "Attorney Stein did not file a response to the State Bar's motion." See Case No. 12-985 SB RJN Ex. E at 1. The order found that "the evidence clearly and convincingly shows that an order involuntarily enrolling [Stein] as an inactive

---

[3] The Order authorized the Bar to remove such files from "Stein's law office" and from "any other address in California where reliable evidence established client files and law office records are located." Id. at 2.

member of the State Bar of California is appropriate under [section 6007(b)(2)]," and granted the State Bar's motion. Id. at 2.

Stein apparently sought to appeal the state court's assumption Order, and then dropped his appeal soon after Defendants moved to dismiss it. See Case No. 12-985 SB RJN Ex. G (appellate court docket noting "Abandonment of appeal filed in trial court").[4] As recently as April 6, 2012, after Stein filed his complaint in this Court, Stein's clients moved to terminate the state court's continued jurisdiction over the matter. See Case No. 12-987 SB RJN re Opp'n to TRO (dkt. 100) Ex. H ("Interested parties . . . seek to terminate this Court's jurisdiction over the law practice of Mitchell J. Stein."). The Court denied that request, noting that because

> Stein was declared "not eligible" to practice law by the State Bar on January 1, 2012 ("involuntary inactive"), the Court would be without jurisdiction to terminate this proceeding and return a law practice to an attorney not eligible to practice law. As such, it makes logical sense for Mr. Stein to first seek reinstatement before terminating this proceeding.

Id. at 2. The court explained that it lacked the jurisdiction to return Stein to "active practice, and that "unless and until Mr. Stein petitions the State Bar Court for a determination that 'there is no longer a basis for the member's inactive enrollment,' there is no basis to terminate this proceeding." Id. The assumption proceeding is therefore ongoing. See also Case No. 12-985 FAC ¶ 14 ("the Los Angeles Superior Court continues to maintain court orders in effect against Mitchell J. Stein").

### B. Attorney General Enforcement Action

On the same day that the State Bar initiated its assumption proceeding, the California Attorney General brought suit against Stein and twenty other defendants for allegedly engaging in false advertising and unfair competition under Cal. Bus. & Prof. Code §§ 17200 and 17500. See generally Case No. 12-985 AG RJN (dkt. 25) Ex. A. That suit alleged that Plaintiff and his co-defendants made misrepresentations while selling participation in lender lawsuits to homeowners facing foreclosure. Id. ¶¶ 1-5. Allegedly, Plaintiff and his co-

---

[4] Neither the substance of the appeal nor the substance of the motion to dismiss are ascertainable from the docket, and the parties do not otherwise provide such information.

1  defendants would send misleading mailers to homeowners stating that they are potential
2  plaintiffs in a "national litigation settlement," that they might receive their homes free and
3  clear of a mortgage, stop foreclosures, and receive thousands of dollars in damages," even
4  though no settlements exist and in some cases no cases have been filed. Id. ¶ 2. Once
5  homeowners call, telemarketers allegedly make additional misleading claims, and induce the
6  homeowners to sign retainer agreements; once the homeowners do so, Plaintiff and his co-
7  defendants allegedly take the homeowners' money, and then the homeowners find
8  themselves unable to speak with an attorney with knowledge of the lawsuit. Id. ¶ 4. The
9  Attorney General alleges that thousands of Californians fell victim to the scam. Id. ¶ 5.

Also on the same day, the state court granted the Attorney General's *ex parte* application for a temporary restraining order and ancillary orders to freeze personal assets held in Stein's name and place them under control of a court-appointed receiver. See generally Case No. 12-985 AG RJN Ex. B (Temporary Restraining Order); Id. Ex. C (Order Appointing Receiver and Order to Show Cause re Confirmation of Appointment). The Order appointing a receiver exempted the receiver from taking any assets subject to the State Bar's possession pursuant to the State Bar Interim Orders Assuming Jurisdiction. Id. at 5.

In November 2011, after an evidentiary hearing, the state court entered a preliminary injunction against Stein. Id. Ex. D. The Attorney General enforcement action is indisputably ongoing. See id. Ex. D-1 (docket from enforcement action).

### C. Litigation Brought By Stein

Stein has a Chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of Florida, Case No. 09-14345-PGH. On August 2011, he filed an adversary Complaint in that proceeding against the Attorney General Defendants, the California State Bar, and another defendant, Adv. No. 11-024525-PGH. Id. Ex. F (Adversary Complaint). The Bankruptcy Court dismissed that case. See id. Ex. F. Stein's clients also filed cases in Florida, California, and New York: <u>Gonzales, et al. v. State of California, et al.</u>, S.D. Fl. Case No. 11-cv-61967; <u>Ricciardi, et al. v. State of California, et al.</u>, S.D.N.Y. Case No. 11-cv-

1  06230-RPP; and <u>Boroni, et al. v. State of California, et al.</u>, C.D. Cal. Case No. 11-7303 PA
2  (MAWx) (in this last case, Stein is also a plaintiff). <u>Id.</u> Exs. H, I, J.

3    Stein filed suit in this Court on February 27, 2012. <u>See</u> Case No. 12-985 Compl. (dkt.
4  1). His clients brought suit the same day. <u>See</u> Case No. 12-987 Compl. (dkt. 1).

5    In <u>Stein v. Harris</u>, 12-985, Stein brings causes of action for: (1) violation of 42 U.S.C.
6  § 1983, based on a violation of Article I, section 7 of the California Constitution; (2)
7  violation of 42 U.S.C. § 1983, based on a violation of Article I, section 13 of the California
8  Constitution; (3) violation of 42 U.S.C. § 1983, based on a violation of the Fourteenth
9  Amendment; (4) violation of 42 U.S.C. § 1983, based on a violation of the Fourth and
10 Fourteenth Amendment; (5) extrinsic fraud and violation of 42 U.S.C. § 1983, based on a
11 violation of the Fourteenth Amendment; and (6) violation of 42 U.S.C. § 1983, based on a
12 violation of the Fourteenth Amendment. <u>See</u> Case No. 12-985 FAC ¶¶ 30-73. That FAC
13 seeks injunctive relief, costs of suit, and attorneys' fees. <u>Id.</u> at 26.

14   In <u>Copper v. Harris</u>, 12-987, Stein's clients bring causes of action for: (1) violation of
15 42 U.S.C. § 1983, based on a violation of Article I, section 7 of the California Constitution;
16 (2) violation of 42 U.S.C. § 1983, based on a violation of Article I, section 13 of the
17 California Constitution; (3) violation of 42 U.S.C. § 1983, based on a violation of the
18 Fourteenth Amendment; (4) violation of 42 U.S.C. § 1983, based on a violation of the Fourth
19 and Fourteenth Amendments; (5) extrinsic fraud and violation of 42 U.S.C. § 1983, based on
20 a violation of the Fourteenth Amendment; and (6) Statute or Application thereof
21 Unconstitutional under 42 U.S.C. § 1983. Case No. 12-987 FAC (dkt. 23) ¶¶ 382-474. That
22 FAC seeks general damages "including $1 billion," special damages, injunctive relief,
23 punitive damages, costs of suit and attorneys' fees. <u>Id.</u> at 85.

24   On July 12, 2012, the Court held a hearing on Plaintiffs' Motions for Temporary
25 Restraining Order. <u>See</u> Case No. 12-985 Minutes (dkt. 71); Case No. 12-987 Minutes (dkt.
26 116). The Court explained that it did not find that Plaintiffs were likely to succeed on the
27 merits because it seemed as though <u>Younger</u> abstention applied; the Court further noted that
28 Plaintiffs had delayed unreasonably in bringing their Motions for Temporary Restraining

Order. The Court declined to set a hearing on any preliminary injunction, and explained that the next step would be a hearing on the motions to dismiss, which were already on file.[5] Those motions are the subject of this Order.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003). "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).

A complaint should not be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

## III. DISCUSSION

Defendants' motions to dismiss raise numerous grounds for dismissal, including Younger, Eleventh Amendment immunity as to official acts, prosecutorial immunity, *res judicata*, failure to state a claim under 42 U.S.C. § 1983, and lack of standing for Stein's clients. See generally MTDs. They also request that the Court transfer venue based on a

---

[5] One further note: on Monday July 23, 3012 Plaintiffs in both cases filed Notices of Appeal from the July 12, 2012 hearing denying Plaintiffs' request for a temporary restraining order. See Case No. 12-985 (dkt. 77); Case No. 12-987 (dkt. 121). Both Notices of Appeal asked the Ninth Circuit to stay these cases. The Ninth Circuit denied Plaintiffs' requests for a stay, and so this Court retains jurisdiction to adjudicate the motions.

1 Central District of California local rule. Id.[6] The Court finds that Younger applies to all of
2 Plaintiffs' claims, and does not reach Defendants' other arguments.

### A. Application of Younger

"Younger and its progeny teach that federal courts may not, where circumstances dictate, exercise jurisdiction when doing so would interfere with state judicial proceedings." Canatella v. California, 304 F.3d 843, 850 (9th Cir. 2002); see also Hirsh v. Justices of the Supreme Court of California, 67 F.3d 708, 712 (9th Cir. 1995) ("Younger and its progeny generally direct federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings"). "A district court must abstain and dismiss a suit on the basis of Younger where: (1) state proceedings are ongoing; (2) important state interests are involved; and (3) the plaintiff has an adequate opportunity to litigate federal claims in the state proceedings." Canatella, 304 F.3d at 850.

"Where Younger abstention is appropriate, a district court cannot refuse to abstain, retain jurisdiction over the action, and render a decision on the merits after the state proceedings have ended. To the contrary, Younger abstention requires dismissal of the federal action" even if it just means the plaintiff will simply refile the federal complaint. Beltran v. State of Cal., 871 F.2d 777, 782 (9th Cir. 1988) (emphasis in original). That said, in Gilbertson v. Albright, 381 F.3d 965, 981 (9th Cir. 2004), the Ninth Circuit explained that "when damages are sought and Younger principles apply, it makes sense for the federal court to refrain from exercising jurisdiction temporarily by staying its hand until such time as the state proceeding is no longer pending."[7]

---

[6] This argument is that Plaintiffs filed Boroni in the Central District, and that, instead of re-filing Boroni in the Central District when that case was dismissed for failure to serve summons within 120 days, Plaintiffs brought suit in this Court. See Case No. 12-987 AG MTD (dkt. 74) at 15-16. Doing so apparently violated Central District Local Rule 83-1.2.2, "which provides that when an action is dismissed and 'essentially the same' claims are re-filed, they must be re-filed before the judge who heard the first action." Id. at 16. Defendants add that "the Central District is familiar with these allegations, and no facts are alleged to show that any relevant conduct occurred in the Northern District." Id.

[7] The court explained that "[i]n this way, neither the federal plaintiff's right to seek damages for constitutional violations nor the state's interest in its own system is frustrated." Id.

1  In Hirsh, attorneys facing State Bar of California disciplinary proceedings brought
2  section 1983 claims in federal court. The Ninth Circuit held that Younger abstention applied.
3  First, the state court proceedings were ongoing at the time the complaint was filed, as Notices
4  to Show Cause had been issued, but the California Supreme Court had not taken any action
5  on the State Bar's recommendation. Hirsh, 67 F.3d at 712. The court also held that the
6  proceedings were judicial in nature. Id. Second, the court held that attorney disciplinary
7  proceedings implicate important state interests. Id. at 712-13. And third, because federal
8  constitutional claims may be raised in judicial review of the Bar Court's decision, the court
9  held that the third requirement – the opportunity to litigate the federal claims – was also
10 satisfied. Id. at 713. The fact that such judicial review is discretionary did not preclude the
11 application of Younger abstention. Id.
12 The same analysis applies here.
13 First, there is no question that the Attorney General enforcement action is ongoing.
14 See Case No. 12-985 AG RJN Ex. D-1 (docket from enforcement action). Plaintiffs argue,
15 however, that "[t]here is no ongoing state proceeding against Plaintiff Mr. Stein with respect
16 to his law license" and that the State Bar assumption proceeding "has concluded with no
17 right to appeal." Case No. 12-985 Opp'n to SB MTD at 15. But the state court affirmed
18 recently that the State Bar assumption proceeding is ongoing when it refused to terminate the
19 proceeding. See Case No. 12-987 SB RJN re Opp'n to TRO Ex. H ("Interested parties . . .
20 seek to terminate this Court's jurisdiction over the law practice of Mitchell J. Stein. . . . there
21 is no basis to terminate this proceeding."). And, although Plaintiffs are correct that
22 assumption orders under section 6190 are not appealable, Stein conceded at the motion
23 hearing that such orders may be reviewed by writ petition.[8] See also Cal. Bus. & Prof. Code
24 § 6180.13 (stating "An order made pursuant to this article is nonappealable, and shall not be
25 stayed by petition for a writ except as ordered by the superior court or the appellate court" –

---

[8] Stein apparently sought to appeal the state court's assumption Order, and then dropped his appeal soon after Defendants moved to dismiss it. See Case No. 12-985 SB RJN Ex. G (appellate court docket noting "Abandonment of appeal filed in trial court"). Again, this Court is not aware of the content of Stein's appeal.

and thus acknowledging that such matters are reviewed by writ); Benninghoff v. Superior Court, 136 Cal. App. 4th 61, 66 (2006) (where state court assumes jurisdiction of an attorney's practice, "review may be sought only by a writ petition."). In addition, attorneys can seek review of an order granting or denying a motion for involuntary inactive enrollment under the State Bar rules; Rule 5.185 provides, "An order granting or denying a motion for involuntary enrollment under Business and Professions Code § 6007(b)(2) is reviewable under rule 5.150."[9] A member transferred to inactive status may also later petition the State Bar Court to transfer him back to active status because of changed circumstances. See State Bar Rule 5.205. An order granting or denying that petition is also reviewable. State Bar Rule 5.211.

Importantly, "Younger abstention applies to prevent federal intervention in a state judicial proceeding in which a losing litigant has not exhausted his state appellate remedies" – even where a litigant's trial was completed, "the state court proceedings were still pending for Younger abstention purposes" where the litigant had not exhausted his appellate rights. See Dubinka v. Judges of Superior Court of State of Cal. for Cnty. of L.A., 23 F.3d 218, 223 (9th Cir. 1994). Here, Stein's underlying state court actions are ongoing for Younger purposes, both because the proceedings have not terminated, and because Stein has available remedies he has not sought.[10] The state court recently explained what Stein should do: petition "the State Bar Court for a determination that 'there is no longer a basis for the member's inactive enrollment,'" before seeking to "terminate this proceeding." See Case No. 12-987 SB RJN re Opp'n to TRO (dkt. 100) Ex. H.

Second, the proceedings involving Stein indisputably implicate important state interests, just as the State Bar disciplinary proceedings did in Hirsch. In Middlesex County

---

[9] California State Bar Rule 5.150 sets forth the procedure for petitions for interlocutory review and review of specified matters.

[10] Defendants make the interesting point that, even if Plaintiffs were correct and that the state court proceedings had terminated, Plaintiffs' suit would be barred by Rooker-Feldman, which "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." See Case No. 12-985 SB Reply at 4 n.4; Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). The Court need not address this argument as it concludes that the state proceedings are ongoing.

G:\CRBALL\2012\985\order re MTDs.wpd      10

1   Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 434 (1982), the Supreme Court
2   noted that states have "an extremely important interest in maintaining and assuring the
3   professional conduct of the attorneys it licenses."  The Attorney General enforcement action,
4   the State Bar assumption proceeding, and the involuntary inactive finding all implicate the
5   important interest the state of California has in ensuring that lawyers practicing in its state do
6   so ethically.

   Third, Plaintiffs have failed to demonstrate that they are unable to litigate these issues
   in state court.  "[A] federal court should assume that state procedures will afford an adequate
   remedy [for constitutional issued that arise], in the absence of unambiguous authority to the
   contrary."  Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987).  There is no reason to believe
   that Stein was unable to make any constitutional arguments in state court, or that he could not
   do so in a writ petition.  His clients could submit declarations, be heard through Stein, or
   seek to intervene or join at least the enforcement action.  Additionally, there is already a state
   court order for the return of their client files, Case No. 12-987 AG RJN Ex. E, and if that
   order is not being enforced, nothing prevents them from going to state court and asking it to
   take action.

### B.    Stein's Clients

As explained at the motion hearing, the Court will abstain not only as to Stein, but also as to his clients, who are not parties to the state court proceedings.  See Green v. City of Tucson, 255 F.3d 1086, 1100 (9th Cir. 2001), overruled in part on other grounds by Gilbertson, 381 F.3d 965 ("Younger may oust a district court of jurisdiction over a case where the plaintiff is not a party to an ongoing state proceeding [when the party's] interest is so intertwined with those of the state court party that . . . interference with the state court proceeding is inevitable.").

In Canatella v. State of California, 404 F.3d 1106 (9th Cir. 2005),[11] the Ninth Circuit examined this issue in detail.  It explained that in Green, the court had compared two cases

---

[11] Plaintiffs at the motion hearing agreed with the Court that it should follow Canatella.  To clarify, as explained below, the Court believes that Canatella provides the relevant law on this issue; however, the Court finds that the facts in the instant case are distinguishable from the facts in Canatella.

G:\CRBALL\2012\985\order re MTDs.wpd                           11

1   with different outcomes.  In <u>Hicks v. Miranda</u>, 422 U.S. 332 (1975), after two of its
2   employees were charged under the same obscenity statute for showing a film, and copies of
3   the film were seized, owners of an adult movie theatre sued for the return of their copies and
4   an injunction barring enforcement of the statute.  There, <u>Younger</u> barred the suit because
5   "[t]he owners' 'interests and those of their employees were intertwined,' given the fact that
6   the seized films belonged to the owners but were central to the pending prosecutions."
7   <u>Canatella</u>, 404 F.3d at 1114.  In contrast, in <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922 (1975),
8   where three bar owners sought an injunction in federal court against the operation of a local
9   ordinance prohibiting topless entertainment in bars, and two had complied with the ordinance
10  and the third did not and was prosecuted in state court, <u>Younger</u> did not bar the two plaintiffs
11  who were not being prosecuted.  <u>Canatella</u>, 404 F.3d at 1114-15.  Although the bar owners
12  were "represented by common counsel, and [had] similar business activities and problems,
13  they [were] apparently unrelated in terms of ownership, control, and management." <u>Id.</u>
14  (citing <u>Doren</u>, 422 U.S. at 928-29).

15      The court in <u>Canatella</u> found that its facts more closely resembled <u>Doren</u>. <u>Id.</u> at 1115.
16  Both individuals in <u>Canatella</u> were attorneys who challenged the same state bar rules, and
17  sought to enjoin the state from instituting further disciplinary proceeding against them.  <u>Id.</u>
18  "But [one individual] is interested in [the other individual's] action, and vice versa, only to
19  the extent that it may set a legal precedent and thereby collaterally affect the viability of his
20  own federal action and his constitutional objections to his own disciplinary proceedings." <u>Id.</u>
21  The court explained that the two individuals "operate independent legal practices, their
22  disciplinary proceedings are not interrelated, and neither has a direct interest in the State Bar
23  of California's ability to initiate disciplinary proceedings against the other." <u>Id.</u>

24      Here, Stein's clients are not like the bar owners in <u>Doran</u> or the attorneys in <u>Canatella</u>,
25  interested in someone else's state court proceedings because those proceedings might have
26  some indirect, precedential implications for them.  They are far more like the theatre owners
27  in <u>Hicks</u>, whose property (there, film; here, their client files) was seized and was "central to
28  the pending prosecutions."  <u>See Canatella</u>, 404 F.3d at 1114; <u>see also Sempra Energy Trading</u>

1 Corp. v. Brown, No. 04-4169, 2004 WL 2714404, at *8 (N.D. Cal. Nov. 30, 2004) (applying
2 Younger abstention where litigant could not "plausibly claim to be uninvolved in the state
3 proceedings" but was not an actual party to state proceedings). They are not attorneys in a
4 position parallel to Stein, facing parallel allegations of wrongdoing and, like Stein, having
5 their practices assumed by the State Bar. Rather, they complain directly about the allegations
6 against Stein and the assumption of Stein's practice by the State Bar. See, e.g., Case No. 12-
7 987 FAC ¶ 350 (alleging that "[t]he only result of the Defendants' action is that the
8 Plaintiffs' cases have been stayed, justice against the banks has been delayed and Mr. Stein
9 has been deemed to have had his 'practice' assumed and thus has been deemed to submit to
10 the involuntary inactivation of his law license" and that such action "wrongfully take[s] away
11 their lawyer of choice, Mr. Stein, pursuant to a farcical set of proceedings – not appealable –
12 in which the State Bar persuaded one judge that the LLP did not exist").

13       The Court could not agree with Stein's clients' allegations that the Stein's practice
14 was assumed improperly without directly interfering with Stein's ongoing state court cases.
15 Indeed, one of the remedies his clients explicitly seek is an order enjoining further
16 enforcement of the section 6190 proceedings. See Case No. 12-987 FAC ¶ 473. Stein's
17 clients' interests are so intertwined with Stein's that "interference with the state court
18 proceeding is inevitable." See Green, 255 F.3d at 1100. Additionally, if Stein prevails in
19 state court, that victory will directly impact the Copper plaintiffs. Accordingly, Younger also
20 applies to Stein's clients.

21     **C.**    **Extraordinary Circumstances**

22       Finally, Plaintiffs argue that the Court should not abstain because extraordinary
23 circumstances are present. See Case No. 12-985 Opp'n to AG MTD (dkt. 50) at 15 ("There
24 has been harassment and prosecutions undertaken by state officials in bad faith.").[12] Indeed,

---

[12] Plaintiffs also allege that the judgments in the state proceedings were obtained by extrinsic fraud. Id. To the extent that this allegation is intended to implicate Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004), a case Plaintiffs characterized as "dispositive" in the TRO motion hearing, it does not do so. Kougasian, 359 F.3d at 1141, involved the Rooker-Feldman doctrine, not Younger abstention; the Ninth Circuit held that Rooker-Feldman did not bar claims asserting that a state court judgment had been obtained by extrinsic fraud. Here, as the actions are still ongoing in state court, there

the Supreme Court held in Perez v. Ledesma, 401 U.S. 82, 85 (1971) that "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." Perez does not prevent the Court from abstaining here. That narrow exception to Younger applies if circumstances are "'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief." Moore v. Sims, 442 U.S. 415, 433 (1979). "[T]he 'cost, anxiety, and inconvenience of having to defend against a single . . . prosecution' [is] not the type of injury that could justify federal interference." Huffman v. Pursue, Ltd., 420 U.S. 592, 601-602 (1975). Bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." See Kugler v. Helfant, 421 U.S. 117, 126 n.6 (1975).

Here, the Attorney General has filed one enforcement action against Stein. The state court entered a preliminary injunction against Stein. See Case No. 12-987 AG RJN Ex. D. It could not have done so without finding that the Attorney General's office was likely to succeed on the merits. Despite Plaintiffs' conclusory allegations of bad faith, there are no plausible allegations of bad faith here. See Wright & Miller, Federal Practice & Procedure § 4255 ("There is no case since Younger was decided in which the Court has found that the exception for bad faith or harassment was applicable"). Nor have Plaintiffs plausibly alleged that section 6190 is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." See Watson v. Buck, 313 U.S. 387, 402 (1941).

Plaintiffs have not come close to meeting their burden of showing that extraordinary circumstances require the Court to not abstain.

**D.  Conclusion as to Younger**

Plaintiffs ask this Court to interfere with ongoing state proceedings; the Court will abstain under Younger.

---

is no reason Plaintiffs cannot bring their allegations of extrinsic fraud to the attention of the state court.

G:\CRBALL\2012\985\order re MTDs.wpd                    14

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS all four motions to dismiss based on Younger abstention. In the Stein case, 12-985, which seeks only injunctive relief, the Court DISMISSES the case; in the Copper case, 12-987, which seeks both damages and injunctive relief, the Court STAYS the case as to damages. See Gilbertson, 381 F.3d at 981 ("when damages are sought and Younger principles apply, it makes sense for the federal court to refrain from exercising jurisdiction temporarily by staying its hand until such time as the state proceeding is no longer pending.").

**IT IS SO ORDERED.**

Dated: August 3, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE